May it please the Court, my name is Brad Schleyer and I represent the appellant Patricia Murray. I'd like to reserve two minutes for rebuttal. There is a single issue here today before the Court on this case, and it's whether the District Court erred in holding that Murray was not an employee pursuant to Title VII as a matter of law, and dismissing her claim when questions of fact remain with regard to Murray's employment stats. As this Court can see from its de novo review in this case, and the record presented in this case, there is a significant factual dispute that exists with regard to Murray's status with Principal. This Court has been very specific in the Adcock case in describing the type of inquiry that's required by a District Court in looking at this employment status under Title VII. Specifically, this Court has noted that determining whether a relationship is one of employment or independent contractual affiliation requires a fact-specific inquiry which depends on the economic realities of the situation. The primary factor is the extent of the employer's right to control the means and manners of the worker's performance. And then it goes on to describe some of the other considerations that the Court can consider, such as what the contract stated between the parties, the type of occupation that it is, and things like that. In weighing these factors, the Court has noted that the primary factor is the right to control the means and manner of the work being performed. The Court should also consider things like the interdependence of the employer and the proposed employee. Courts will also try to minimize the labels that the parties put on these types of relationships. Well, there's no real dispute over the standard, is there? No. No, there isn't, Your Honor. And the problem that we have here is that we have a standard and the Court took it. As I said, we submitted our record. It's a significant record in this case. And if you – its application in this situation, the Court obviously had to weigh certain factors. And I think we provided this Court with various cases. It all seems to be dealing with one defendant, the Farm Bureau, which is another insurance agency. And in those cases, if you read through those cases, they're very instructive because the courts in those cases all had specific hearings or evidentiary hearings or trials on that issue. Well, this was on summary judgment. Correct. You agree as to the standard. Yes. What is the disputed issue? You do want a trial? Or do you want – I thought you wanted us to say that this went wrong as a matter of law. Well, I'd love to have that, but I think as a base level, the Court erred as a matter of law by not having a trial or a hearing. What is the disputed fact that you would have the trial? Well, there are numerous factors that have to be weighed in this case, Your Honor. I mean, it starts even from the initial contract in the case. We start out with a contract that says you're an independent contractor, and then if you read through the contract, the contract has numerous factors where they require her to – But there's no dispute over what the contract says. Exactly. But I think those two things – again, the Court would have to weigh that evidence to determine, yes, you're an independent contractor versus you're an employee. What is this – so you seem to be arguing, well, since we have a multi-factor test, we always have to have a trial. Is that – what is the law that says that? You can't have summary judgment on the question of whether someone's an employee. Well, if there's no evidence – I mean, but in this case, there's evidence that shows that there is control in place by principle. So in that situation, we do need to have some type of evidentiary hearing or a trial in that situation. And I think if you look at cases like the Knight case, the Schweiger case, the Wilson case, all those cases have that same type of analysis where they're sitting there and making the determination that we can't make a determination on summary judgment. Okay. But the strongest case, the strongest Ninth Circuit case that supports your position, that in the circumstances of this case there must be a trial is what? Well, the Ninth Circuit, there's not a lot of cases dealing with this specific situation. So that's why we're here on this. I mean, we're dealing with the ADCOC standard, and then we're looking at the cases where you're dealing with insurance agents, and there seems to be a whole body of law dealing with insurance agents in situations like that. But didn't ADCOC itself conclude that summary judgment was appropriate under those circumstances? It did in that case, but they didn't go through the full analysis like you have in some of these other cases. I think in ADCOC, it was a little bit – they set the standard out, but it was a very different case. It was dealing with a car dealer, somebody working for a car dealer, and agency principles that were a little bit different than the standard situation where you have a person that is going to work for an insurance agency directly. Are you familiar with the Barnhardt case? Yes. Okay. What's the difference between that case? That was an insurance agent case. It is. But, again, we have in this case compared to that case, we have such a large – much larger factual record that provide different things that the Court can't weigh out those types of factors and make a decision, Your Honor. I mean, the problem that we have – Why is that? What's the critical distinction between this case and Barnhardt if you were writing the opinion? Well, Your Honor, I mean, we started out with the contract itself that I think that has evidence that can be weighed either way. Then we get into what happens when the person starts with principle, where the agents are required to work in the office. The agents are required to provide reports on a weekly basis. The employer provides the means and manner for, you know, for working the job. They provide computers. They provide business cards. You're required to – you're required to have your advertising approved. You're required to provide reports when you do financial services matters. There's just a bevy of factors that are there that the Court had to obviously weigh to make a decision that she was not an employee or claimed that she was not an employee under Title VII. Barnhardt was also summary judgment, was it not? That's correct. And you reject out of hand the contract between the parties. But actually there were multiple contracts, as I understand it, where Ms. Murray repeatedly agreed that she was an independent contractor. I think it's really the main contract, the career agency contract, Your Honor. And she didn't sign it multiple times as it came back? No. I believe it's only one. I think it's one time she signed it. But in any event, and I realize you're not alone in contending this, that the contract characterization isn't binding in any event. Is it entitled to some weight? It is entitled to some weight. And that's the problem here, that now we're weighing evidence. And that's the issue that we're dealing with here, is that now you're starting to weigh evidence. Because any employer then could issue a contract to any employee and say you're an independent contractor. And that is a way to avoid liability under things like Title VII or the ADEA or the ADA. Didn't she tell the IRS that she was an independent contractor? She filed certain kinds of business expenses that would be permitted to her because she was an independent contractor? She does. And, again, that's another factor that is weighed again. If you were to prevail here today, would the IRS have an action against her then because she had claimed too much on her taxes? I haven't thought of it, but potentially they could. So there may be tax consequences adverse to your client if she prevails here today. And it could be adverse to principal, too, because maybe they haven't withheld enough FICA and things like that. Again, Your Honor, if we look at some of the precedents that's come down in the insurance agencies, most of these cases that we've cited, such as the Mitchell case, again, the Farm Bureau cases, they all focus on the fact that we cannot just sit as a court and weigh out these factors and make a decision because that's what is not permitted under the rules of decision for summary judgment. And with that, I think I'll just reserve. May it please the Court, my name is Barbara McLeod, and I represent the defendants in this case who collectively I'll refer to as principal. Could you keep your voice up, please? Yes, certainly. The acoustics here aren't the best. A little echo. Beautiful courtroom, but not great acoustics. Very good. Just let me know if this isn't going to be loud enough. I believe that the court has clearly had precedent with this specific issue. Independent contractor status with regard to insurance agents isn't a new consideration for this court nor for courts across the land. Repeatedly, both in motions for summary judgment and at bench and jury trials as well, courts have looked at the various tests and repeatedly looked at it in the context of an insurance agent and found that even with some indicia of an employer-employee relationship, when viewed in total, regardless of what test is used, you're going to come to the same conclusion that Ms. Murray was an independent contractor. As Judge Bybee pointed out, she represented to the IRS regularly that she was self-employed. She deducted from her income expenses, a lease, office equipment, automobile and truck expenses, her own expenses that she would incur in courting customers. You look at who set her schedule. Well, she did. If she only wanted to work one day a week, that's what she did. Principal had absolutely no influence over what Ms. Murray did day in and day out 365 days of the year. Did she have quotas to make? She did not have quotas to make. Was she selling insurance products or was she selling other financial instruments or what was she selling? She was selling insurance products as well as other financial products. Was she on a commission? She was commissioned. That's correct. The other thing I wanted to point out is that, as noted, Ms. Murray didn't just sign one contractual agreement with Principal. She actually signed four. And I think it shouldn't be overlooked that every single one of those had language specifically detailing in there the relationship of the parties, that of independent contractor, not employee-employer, and specifically language that said nothing in the relationship of the parties is to be construed in any other manner. And to me, if you take any test and step back and look at all of those elements, if you want to start with the contract and the language in the contract or if you want to start with who controls this individual's day-to-day work life, you're going to come to the same conclusion. Unless the Court has questions for me, I will rest. There don't appear to be any. Thank you. Shalaya? Thank you. I think I want to add some more because I think that counsel may have, I would say, misled but didn't state the full record with regard to the control levels that were had here. First of all, as was questioned by the Court, there were quotas in place, and there was testimony that specifically said that Ms. Murray could be disciplined if she did not meet her quotas in this case. And this is just not an arm's-length situation where she could work one day a week. Also, the employer could enter her offices at any time. They could take documents, look at her computer. They can do, you know, so this is not a situation where she's got her own independent world. Now, acknowledging the tax situation, that was a separate business that she had labeled as a Murray financial, but that did not take away from the control levels that were here. They provided her furniture for her office. They also, again, provided marketing material. And one of the best things that we see about control in this case is in the union program that I think we described in our brief. And with regard to the union program, you saw the type of control that was being exercised over Ms. Murray by her supervisor. Specifically, she had to get programs approved. She had to let them know how she was going to work in the program. She couldn't do sales events without getting it approved through her supervisor in that situation. So, this is not a situation where there's no control being exercised. She could do what she wants. In fact, it wasn't until she filed a charge of discrimination that her supervisor started sending her notes saying, well, you're an independent contractor. You can do what you want to do in this situation. So, it's not as clear cut as counsel makes it seem, as well as I think the court is trying to make this appear right now. There's a lot of facts that are being, that are out there in this case that need to, that were weighed by the district court. And that is not what the standard is in this case. For summary judgment, and if it's not a fact-specific inquiry, then we, the standard is. Well, I guess the problem is how do the facts materially differ from the facts that led us to, and other courts, to conclude that an insurance agent was an independent contractor? Well, but they, they. You keep going back to this idea you can never have summary judgment. But there are lots of summary judgment cases in, in independent contractors. Sure. And then you have the cases that I was discussing with you, Your Honor, where they said you really can't, and that you can't, each case is individual in difference. You know, as one of the courts noted, and I think it was the Wilson court, goes if a trier of fact concluded that Wilson was an employee, that would be reason given the similarities to the Phoenix case, which is another case. But if a trier of fact here concluded Wilson was an independent contract, that would be also be reasonable given the differences. The results in other cases also provide some precedential guidance, but are ultimately inconclusive, conclusive because of potentially distinguishing facts. So your Wilson case is your strongest authority? Well, I think that whole group, the Knight case also, because that case, you see the dynamics where the Knight district court found that we, you know, we have to have a trial on this. They deny both motions for summary judgment. Then they have their trial, and it gets up to the court of appeals in Knight, and they say, under the clearly erroneous standard, we have to agree with what the district court found. But if we had heard the evidence, we may have found the other way. If we had done this on a de novo review, we may have found the other way if we looked at all the evidence. And I think that's where we are with this case. It's similar to the Knight case because I think that's the dynamic that we need to go through with this. And with that, we just request that the case be reversed. Thank you. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Stotler, Schroeder, Bybee